Could the attorneys on the first Sakura case v. Krishna approach the witness, or the first podium? Good morning, Your Honor. Alexander T. asking for the plaintiff. Good morning, Mr. T. How are you? I'm fine, thank you. Good morning. Dan Calsombia, as the defendant. Could you spell your last name, please? I'm sure it's C-O-S-T-E-L-L-O. There was one thing I wanted to mention to the court. I don't think it's an issue. I talked to counsel about it before we stepped up. One of the attorneys at my office, Peter Saragelis, was a clerk for Justice Borden about nine years ago, so I just wanted to disclose that and allow them to tell the court their position on that. Thank you. Do you have any comment? No. I mean, I have no problem with that. I've had lots of clerks. And he's just a member of your firm. You've got a big firm. What firm are you from, then? Daniel P. Costello, I'm a solicitor. That's me. Yeah, okay. Okay. All right. And we have no objection. All right. And counsel for the plaintiff, can you spell your last name for me? Sure. It is T-I-E-V-S-K-Y. All right. Mr. Tipsky? T-S-K-Y. He's here, Mr. Costello. All right. All right. Mr. T-S-K-Y, 20 minutes for the argument. Did you want to reserve a portion of that for rebuttal? Yes, four minutes, please. Four minutes. Great. All right. Thank you, gentlemen. Mr. T-S-K-Y, you can begin. Thank you. Good morning, and may it please the Court. Before the 2nd District issued its decision in the Rosenbach case, the circuit court here got it right. The Biometric Information Privacy Act- Yeah, that wasn't a good day, was it, when that one came out? Not for this case, certainly. But we disagree with it. The Biometric Information Privacy Act does not contain an unstated requirement that the plaintiff plead what defendants call a tangible economic loss resulting from a violation of the statute. The defendants in Rosenbach- Would this case be any different if L.A. Tann wasn't having bankruptcy issues? Was that what triggered the plaintiff's concern about her biometric data? I don't know. It isn't what triggered the concern. It's certainly a concern, and it's similar to what happened in the pay-by-touch case that spurred this legislation in the first place. But bankruptcy or not, Ms. Sakura objects to the unlawful collection and disclosure of her biometric information. So when she initially, when they said you're going to get your tanning for a year, you have to give us your fingerprints, did she have any documentation or anything that she agreed to that at that time? No, there's no written record of consent at all, even though the statute requires written consent. And did she testify regarding any memory of discussing what they were going to do with it or- This is a 2619, so she hasn't testified on anything. Right, right. Yeah, she has not alleged anything to that effect, and it didn't happen. But she did allege that the information was transferred or sold to a third party. Yes, it was transferred to the third party that runs the system that makes the fingerprint scanner or that runs the fingerprint scanner. We're not exactly sure because we haven't taken any discovery, but we know that they get it and keep it. So that wasn't even present in the Rosenbach decision, which is currently pending before the Illinois Supreme Court. It is currently pending before the Illinois Supreme Court, and that's correct. The Rosenbach decision concerns only an unlawful collection of information. In this case, it's both a collection and a disclosure. Well, would your position be the same if you didn't have the sale or transfer of the biometrics to a third party? Yes, the position is the same, and that is- But it's a violation. There was no-she wasn't told, she wasn't given-she didn't give a release. Very technical-would you call it very technical violations of the Act? I wouldn't call it technical, no. I would call it exactly what the Act is trying to protect against. The preamble of the Act makes quite clear that the point of it is to allow consumers to keep control of their biometric information, to know where it's going, to know who has it, and to know what they're going to do with it. And that's because once that information- once something bad happens to that information, that's it. You can't change your fingerprints. And so when someone collects it without telling you what they're going to do with it or when they disclose it, those aren't technical violations. Those are exactly what the legislature was trying to stop from happening. So how do we know that? How do we know that they weren't trying to stop an injury, a resulting injury from the technical or these violations of the statute? The best indicator we have of the legislature's intent are two things. First of all, the plain language of the statute itself, which contains no requirement that there is a resulting harm or consequential economic damage. That result-that simply-the statute doesn't say it. But also the preamble of the statute gives an idea of what the legislature was thinking about. Well, let me ask you, why do they have this negligence portion, but then they have an intentional portion? Explain to me how that doesn't suggest a traditional tort where- and how would they negligently violate this act? Sure. So the reason we have that is to avoid it being a strict liability statute. So some other privacy statutes are strict liability, right? You violate it, it doesn't matter your intent. Sure. Aren't you kind of saying something different then? Now you're saying it's definitely not a strict liability statute, but at the same time, if you don't do these things, you're automatically liable. You're not automatically liable. You have to have the right state of mind. So the words negligence, negligent, and intentional are, you know, they're, you know, in a criminal way you'd call it a military requirement. Well, what would be a negligent? Is this a negligent or these intentional acts here? Realize that they're intentional. But you can imagine a negligent act though pretty easily. So, for example, if you had an unsecured computer system and a hacker broke into it and took fingerprint data. Well, that would be a disclosure in violation of the act, but it wouldn't be intentional, it would be negligent. It would be you really should have secured your computer systems and you didn't. Well, how would you negligently, forgetting about the hacking, what's the negligence in taking the information in the first place or getting it? As far as a negligent. Well, how do you incorporate the negligence into all these allegations or all these elements in the statute? Negligence is the failure to exercise reasonable care. In this case, we think the collection was intentional, that they purposely took the information. And by not telling her what they were going to do with it, how they were going to store it, how long they were going to store it, and then not getting it released. Those were all intentional acts. That's correct. And so that's why we have alleged an intentional violation. You know, it is perhaps possible that a jury would not find conduct right into the level of intentionality. I'm not really sure how that would happen in this case, but you can certainly imagine other cases where it could be negligent. And that's why that's in there. And if it's really no fault at all, for example, in the hacking case, if your system is very secure, it's got the top-of-the-line security and it just happens to happen anyway, you probably haven't violated the statute, even though you've lost people's biometrics. Or, you know, there could be other ways. So they give a specific monetary amount for a violation of this act. Is that correct? There are two options. There's either if you can prove actual damages, then you can recover your actual damages. Otherwise, there's a liquidated damages provision that depends on the level of culpability. And in the Rosenbach case, they said you can't establish any damages, right? Well, they didn't actually get to the damages provision. They said that you could not establish that you were aggrieved, which is a predicate not only for damages but also for an injunction. And they were very clear about this, that they hadn't even reached the damages provision. The Rosenbach court said because they read all of this into this one word, aggrieved, they say not citing any Illinois case law at all. No, but they did cite a definite case law, didn't they? But they didn't cite it because there is none, right? There is Illinois case law discussing the word aggrieved from both this court and the Supreme Court. Okay. Discussing aggrieved but not aggrieved in context of this statute. Not aggrieved in the context of this statute. That's correct. So they were blowing the wool on this issue, weren't they? They're the only decision of this court on that issue. That's correct. That's for this statute specifically. So if it applied, the President here had to actually follow that decision, didn't he? Yes, he did. Which is why he reconsidered, right? So he had initially agreed with us and everything that I've told the court today effectively is in his initial opinion, which is in the appendix. But in the second district case, they did cite at least authority for their conclusion, did they not? They cited some federal district court cases? They cited a couple of federal district court cases that I don't think are on point and a Wisconsin case that I can't explain why that case is cited, especially when, as I said, there is a fair amount of Illinois law interpreting what aggrieved means. And what aggrieved means is it identifies the proper party to bring a lawsuit. That's the work that it's doing in this statute. So if you don't have that word aggrieved, then you start to worry about, well, can any member of the public just walk in the door and sue if they feel that someone has violated the statute with respect to somebody else's biometric information? Legislature didn't want that. It wanted individuals to be able to protect their own biometric information. And so if you are aggrieved by a violation of this statute, if it is your personal biometric information that's been taken as opposed to somebody else's. Do you know what the legislative intent was of this act? The legislature, in its preamble, and the title is quite clear. It's the Biometric Information Privacy Act. It's to protect the privacy of Illinois residents' biometric information. And the legislature says in its preamble that they're worried that people aren't going to participate in biometric transactions. They're worried that once this information gets out, that the harm is irreparable, that there's nothing you can do to get your fingerprint back once you've lost control of it. And so the legislative intent is to allow people to keep control of that information and to give companies the incentive to make sure that they keep control of that information. Well, Representative Wright made a statement concerning the bill that the primary impetus behind the bill was to alleviate the fears of thousands of customers wondering what will become of their biometric and financial data and to provide them with protection. Yes. Do you agree with that? That is – so I think that the court has to go based on what the entire legislature enacted as opposed to what one representative said, but that's not an inaccurate statement. And that's exactly what this case is designed to do. Ms. Sokoa, you know, she doesn't know who has her fingerprint now. She doesn't know how long the defendant's going to keep it. She doesn't know what they're doing with it. All of this, what Representative Wright talked about as controls, she's lost. And that's a real concern, and this information is very sensitive, and I think we're going to see it more and more used in financial transactions and all kinds of transactions. I mean, the scanning made it such high security. Do you think we're going to see more and more people giving up their fingerprints for transactions? I do. I don't know if you've been to the grocery store lately, but I see everybody putting their fingerprints on their phones and putting it on the scanner. I think that that is – and the legislature also said that they think that is only likely to increase, that we're at the very beginning of biometric technology in financial transactions and in consumer life, and we don't know what's going to happen in the future. And that's one of the reasons that they passed this statute, is to make sure that that information stays safe. I'd like to address the defendant's second argument now. They say that if you interpret the word aggrieved to mean anything other than what they say, then it becomes superfluous. And as I just said before, that's not true. And it's actually worse than that. If the Rosenbach and defendant's interpretation of the word aggrieved is accepted, then it reads out most of the rest of the statute. So they say the only example that they can give as to when somebody might have a cause of action is while someone else sold the biometric information for profit. And that's true. That's a violation of Section 15C. But if that's the only way someone can violate the statute, then there's no point in having Sections 15A, B, D, and E, which prohibit a whole bunch of other behavior, unlawful collection, unlawful disclosure. The legislature wouldn't have put those subsections in if it hadn't meant them to do something. And the only enforcement mechanism for this statute is the private right of action. It's not a crime like the Video Privacy Protection Act that's discussed in the Sturt case that they cite. There's no attorney general enforcement provision. There's just the private right of action. And so if the legislature didn't intend those subsections to be enforced by private right of action, then they're meaningless. Then they would be totally superfluous. And so you can't stretch the can of construction to interpret one word to read out a whole subsection of the statute. It flies in the face of the plain language. In another defendant's reading, you can't even get – it's not just that you can't get damages. As I said before, you can't even get an injunction to stop this – to stop the unlawful disclosure of information until after you've suffered the harm that the injunction you're asking for would have been designed to stop. And that also can't be – it conflicts with the stated purpose of the statute. It conflicts with the text of the statute. And for those reasons, the court should not accept the defendant's characterization of the Rosenblatt decision and hold that pleading a violation of Section 15b or Section 15d is sufficient to state a cause of action under PEPA. Unless there are any further questions, I can take my seat. Thank you, Mr. Tiasco. Thank you. Mr. Costell. Thank you. May it please the Court. I'm going to start off with what do you think the word agreed means? Well, to your point, the Supreme Court has defined – the only Supreme Court that has defined agreed and it requires the invasion of a legal right of a pecuniary interest that's direct, immediate, and substantive rather than suspective, theoretical, inconsequential, or remote. And so essentially what we're talking about here is they're saying that there's some remote harm that could occur in the future, but they've not alleged that in their complaint. And so ultimately what we're talking about here is agreed by a violation. There's a reason why the statute has agreed by a violation. There has to be – Well, doesn't the legislature, by the language they've used, didn't they create a right to an individual to be told in advance that, you know, giving us this information, we're going to keep it for this amount of time, we're going to store it, we're not going to give it to someone else, and doesn't it also include a right to require the party seeking the biometric information to get a release? So aren't those legal rights? I think there's a – the way to look at this is actionable versus non-actionable. So there may be the fact that – Technical legal rights. I think that the way to look at it is actionable versus non-actionable. It's agreed by a violation. So you have to have some type of harm that occurs to you in order to bring the case before a court. And so this is – there's a – Didn't she allege something different than – Didn't she say it in mental language? Didn't she allege in her complaint that there was a violation of her right to privacy because of the violations? And in addition to the mental anguish she suffered just from knowing that she didn't know? Okay. So I'll try and address both questions. Okay. Yeah, I understand. I might not do it in the order that you like, but I'll try and answer both of them. So two points to respond to that. One is the mental anguish that's alleged in the complaint. First of all, it doesn't comport with Illinois law as far as what is required, even under intentional infliction of emotional distress. Just mere allegations that she had anguish or she stayed awake at night, worrying that her data might go out somewhere in the universe is not sufficient. And that is not what the statute was enacted to try and address. The fact is this is not a strict liability statute. I think you heard that again today. It mirrors a negligence type of format. And so when we talk about what actionable really means, actionable is that we didn't take reasonable safeguards to protect the data. So let's talk about what they've alleged in the complaint. What they've alleged in the complaint, specifically Paragraph 3, is that the plaintiff in this case entered into an agreement with L.A. Tan on a national basis to transact a business transaction, specifically to use her thumbprint, so that she could access all of the L.A. Tan stores nationally. This is a local franchise in Chandler, Illinois. There's no expectation that when she puts her thumbprint down, that that information is just going to stay there. It goes out and it gets verified that it's part of the national database and comes back that she can complete her transaction. 15d2 of the statute specifically says that there's an exemption for a business transaction. So the point of the statute is to balance two things. One is to allow consumers to use this as far as financial transactions and making sure there's reasonable safeguards in place. Did you argue in your brief that the process here or the complaint, the allegations in the complaint, are exempt? Well, specifically we referred to 15d as far as the fact that this is a transaction that is being conducted. That's what the plaintiff has alleged in her complaint. So yes, to the extent that 15d is a business transaction, it comports with the statute. Well, I guess I'm asking you, though, is that really in your brief that you're arguing now that there's an exemption at play here and that that would be a reason to affirm the dismissal? The policy reason behind 15d is that it's the balance between transacting business and specifically safeguards in place for the individual rights of the consumer. I mean, that answers your question. The question is, did you put that in your brief that there's an exemption here? Well, I think we've argued the policy rationale behind it, that there's a balance between the business and the— We just answered the question. It's a yes or no. You either did or you didn't. I think that we have. I think that we have based upon— But you didn't do it in that manner. You didn't say that it was an exemption. You didn't argue that. You're right. We didn't say that it was a specific exemption, but if you look at 15d-2, that's what it says. It says that specifically that this can be used for a business transaction, and that's essentially what it has to do. If you use it for a business transaction, though, Mr. Costello, after you've done what the statute requires, don't you have to still get a release and don't you have to let the person know how long you're going to store it, where you're going to store it, and those sort of things before you're entitled to this exemption? Or am I missing something? Well, I would say two things. One is there are requirements under the statute for certain types of safeguards, and I think that we've heard a lot about that. That's in the briefs. And those are reasonable precautions that need to be put in place. You still have to have an agreed-by violation in order to be able to bring the lawsuit, and they haven't alleged that. The fact of the matter is the reason why those safeguards are out there, if you're thinking about this in a negligence framework, that would be ways that they could prove that we didn't meet reasonable safeguards, that we failed to get a consent if that was actually true, we failed to disclose the entire type of information. All of those type of things fit into the rubric of what we're talking about here, which is was it essentially a negligent violation because of the fact that we failed to meet the safeguards that the statute prescribed? Well, isn't this case, though, slightly different than the Rosenbach? And correct me if I'm wrong, but there weren't really any allegations that there was an invasion of the right to privacy in the Rosenbach case, were there? I think that some of this is a new argument as far as whether or not there's a right to privacy. The statute itself only talks about… In her complaint, she does say, she says by collecting, storing, and using plaintiffs in the class biometric identifiers and biometric information that Krishna Tien violated plaintiffs and the other class members' right to privacy in their biometric identifiers. I mean, that's an allegation. That is an allegation of the complaint. What I would say in response is that other than the fact that privacy appears in the name of the act, and it only appears twice, once in the name of the act and the second in the perfunctory section of it, it's nowhere else defined as a specific privacy right that would be laid out and possibly be actionable the way that I think what the plaintiffs are trying to assert here. You're familiar then with that federal district court case by Judge Minelli, the Dixon v. Washington? Yes. Well, doesn't he kind of reject your position here today and actually distinguishes Rosenbach the way perhaps the plaintiff is attempting to distinguish it? Well, as far as for the Dixon case, I think the court determined that BIPPA was meant to prohibit disclosure of invasion of privacy to that, but ultimately you still have to have standing, which is agreed by a violation. You still have to have what the requisite that modifies all those four elements, which is agreed by a violation. They haven't alleged in this case that they've been agreed by a violation of this statute, and that's what we're saying. I mean, ultimately we're looking at the plain language of the statute. I will say that a couple of things that are important here, in addition to what we've already talked about, is when we're talking about the fact that it's not a strict liability statute, you have to first of all have agreed by a violation, and then it's not a strict liability statute. They haven't alleged sufficiently what the statute requires just on its face, and so that is where we're at. The plaintiff is the master of their own complaint, and they didn't allege this. What do you mean they didn't allege what the statute requires? They didn't allege. It says paragraphs 18 and 19. The BPA or BIPPA also establishes standards of how companies must handle Illinois consumers' biometric identifiers, and then they cite the sections. For example, and then it says BIPPA prohibits private entities from disclosing a person or customer's biometric identifiers without first obtaining consent, and they also mention the other paragraph about selling, trading, otherwise profiting, blah, blah, blah. So they do allege what the statute requires. I don't think that there would be any other fair reading of it. Well, and maybe I misspoke then. What I meant to say was they haven't alleged as against my client. They've laid out what the statute says, but we didn't sell, trade, or otherwise do things that they've alleged are the purpose of the act. I mean, essentially what we have here is somebody knowingly skins their fingerprint at a small franchise, specifically so they don't have to use their wallet and keys, so that they can go intent for that data. But then you disclose that information to a third party, and what assurance do they have that the third party is also going to be controlling that data in a way that they would approve of? Wouldn't they have an action against the third party? Well, if they'd have an action against them, why wouldn't they have an action against them? Well, I mean, I guess the point is this. They're coming in to complete a transaction where they're skinning their fingerprint. She knows that she's skinning her fingerprint specifically for the transaction so she can go intent. That information, we can't be lost on everyone that she knows that she's skinning her fingerprint specifically to complete a transaction. It is not as if this is in a vacuum. She alleges that. She knows that it's specifically part of the L.A. TAN national program, that there's a policy on the website that she alleges in her complaint that she knows that this is biometric privacy, that she's using this specifically for it. And did they disclose that that information is also going to be disclosed to a third party? And you have no control over what the third party does with it. I would say two things on that. One is the fact as far as dissemination to a third party, that was not argued at the trial court level in response to the Rosenbach case. There was an opportunity for them specifically when the Rosenbach case was decided for them to address that specific issue to try and differentiate before the trial court on why this case is different than Rosenbach, and they chose not to. The first time that they raised that was before this court. Don't they allege, though, in their complaint that this information was transferred to a third party? They do allege that it was transferred to a third party. My point is that it's being transferred to a third party specifically to verify it, similar to what a credit card would be. If you wanted to transact a business transaction and you have your credit card at a local store, you understand that it's probably going to go off somewhere else, get verified, and come back. That's essentially what we have here. Sure, but there's a big difference between numbers on a credit card that can be canceled anytime, very easily once there's a detection of some kind of fraud. But what this Act is about is the fact that fingerprints or retina identification and the like, you can't replace those. Once you lose them, they're lost. You lose your credit card numbers, the company issues a new one and cancels the card. So there's a big difference between comparing this to a transaction, a fraudulent transaction with numbers versus somebody's fingerprints. I agree, but I think when we're talking about agree, we get back to the Illinois Supreme Court definition, which it can't be speculative. They haven't alleged any real harm. What you've all pointed out is that the only harm that they've talked about is that she has some type of mental anguish or she can't sleep at night. That's not sufficient as far as what we're talking about. Mere assertions are not sufficient under Illinois law that you say that I have anguish. Similar to the intentional affliction of emotional distress cases. Let me back to you on that. Sure. People allege this is a complaint that was dismissed. You're not on trial. There's quite a difference between the two. They're alleging mental anguish. Wouldn't mental anguish be something that would fall under the category of agreed, if you could prove it? Except I believe that they alleged it in the negligence section of their complaint and not the BIPA section. They didn't allege it in the BIPA section of their complaint. There was three counts to the initial complaint. One was for BIPA, one was for unjust enrichment, and the third was for negligence. They made that specific allegation in the negligence section. And I would agree with you on a negligence type of theory that they could put that in there, they could amend their complaint, they could amend it as many times as they wanted to. But they didn't put it in the BIPA section. Let me ask you this, Mr. Costello. Do you believe that there's absolutely no right to privacy in your own biometric information? What I believe is we're talking about the BIPA statute itself? Yeah. In the BIPA statute it's... There's an allegation, no, going back to my question, there's an allegation in the complaint that by storing it, collecting it, transferring it to a third party, that there's a violation of this particular plaintiff's right to privacy in their biometric information. So my question is, are you saying there is no right to privacy in your own biometric information or identifiers? And I can only answer the question based upon the BIPA statute. The BIPA statute itself is to create an actionable case where it is agreed by a violation. And it sets out... So you could only establish that then after you suffer some injury or damage, correct? Yes. Is that your position? Yes. That the agreed portion of this statute requires an injury to be established? Yes. And there's no injury by any technical violations that occur here? This is a non-actionable violation. So what would be an actionable violation? That's a great question. Well, thank you. So I think in situations where there's credit harm, that you can prove that there's credit harm, that's specifically your information... Are there fingerprints? Essentially what we're talking about is somebody would impersonate you so they would take your identity, there would be impersonation, they affect your credit, that they could essentially use the data in some way that causes real harm to you. So you'd have to have credit monitoring in place for a period of time, you'd have to repair financial relationships as a result of it, they act as yourself by using your thumbprint, whether that's in the fact that they're representing that they're you. I think those are all harms... Total devastation is needed. I'm sorry? Total devastation is needed before this act has any meaning. That's not what... Agreed by a violation simply means... Well, what's the point of all these requirements then? Isn't it to stop the damage before it starts? And that's why the legislature said if you have a violation of the statute, you have an action? Well... Or is it meant to just help those after they've lost their fingerprints forever? What I would say is if the legislature intended to create a strict liability statute, they could have, to stop all of this before anything happened. How do we know this isn't really a strict liability statute? What it says, this is what you have to do, and if you don't do it, there's a private right to get damages. Because... Either what you've been established for, $1,000 outright for negligent disclosure. So I would say two things in response to that. We have to look at the statute itself, and it says agreed by a violation. There's other instances under Illinois law where there are extra liability statutes, and it's very specific. They don't have that here. The other thing here is we talk about liquidated damages, and they say liquidated damages of $1,000 or actual damages, whichever is greater, which implies that there has to be some harm that occurs. What about that AIDS case? How would you distinguish that? Do you know which one I'm talking about? I do know which one you're talking about. We're ready for it, so tell us. So I would say in that there was actual harm. And what was the actual harm? The actual harm was disclosure to a third party which, by the face of the disclosure itself, telling somebody else that they had AIDS is harm. That was an injury. All right. I would agree that's harm. All right. Anything else? All right. If there's no other questions, thank you. Thank you, Mr. Caruso. Mr. Kiyosaki? Mr. Kiyosaki? Just a few brief points. With respect to the extended discussion of Section 15D2, the court's correct. That doesn't appear in defendant's brief. That's why we didn't respond to this new argument, which, of course, I'm hearing of it today. But counsel misstated the statute, so I want to make sure I correct it. It says the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative. It doesn't say business transaction. And it also only applies to Section 15D, the disclosure section. So I think that argument is long-waived, but it also is not – it doesn't apply to this. There's no allegation here that the disclosure completed a financial transaction. It was a financial transaction, and then there's the fingerprint and the subsequent disclosure. Financial transaction is done by that point. At the beginning, there was a discussion of what aggrieved meant, and it was implied that the Illinois Supreme Court had included a pecuniary harm requirement. No such requirement exists. I'm not aware of any Illinois Supreme Court case that says that. And finally, with respect to liquidated damages, the point of the phrase liquidated damages at common law is that you use it when actual damages are going to be hard to prove either in amount or in existence. And so in contract cases, for example, the court doesn't look at whether there's actual damages because it just looks at whether the stipulated liquidated damages are reasonable. Here, the court doesn't even have to take that step because the legislature has decided what the liquidated damages will be. But the use of that phrase implies the common law meaning, which is what the court said in this court's case, Doe v. Chand, the AIDS case, which is that if you have – if you've suffered a violation of the statute, then those are the liquidated damages you get, even though – and in that case, the court held that the plaintiff had not proved actual damages. There was no proof in the record of actual damages. And the court said, But it's okay. She can still get liquidated damages without any proof. And that was correct. Unless there's anything else, I can take my seat. Thank you, Mr. Chairman. Thank you for your time. I appreciate it. Excellent job. A really interesting issue. We're cutting edge here. So the court will issue an order as soon as possible. Thank you both.